Slip. Op. 19-38

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>v.<br><br>UNIVAR USA INC.,<br><br>        Defendant. | Before: Mark A. Barnett, Judge<br>Court No. 15-00215 |

## **MEMORANDUM AND ORDER**

On August 6, 2015, Plaintiff, United States ("Plaintiff" or "the Government"), initiated this action seeking to recover unpaid antidumping duties and a monetary penalty pursuant to 19 U.S.C. § 1592 stemming from 36 entries of saccharin allegedly transshipped from the People's Republic of China ("China") through the Republic of China ("Taiwan") that Defendant, Univar USA, Inc. ("Defendant" or "Univar"), entered into the commerce of the United States between 2007 and 2012. Compl., ECF No. 2. On October 6, 2015, Defendant filed an answer and "demand[ed] a jury trial on all issues so triable, pursuant to Rule 38 of this Court and U.S. Const. amend. VII." Answer at 10, ECF No. 8. The parties have completed discovery, the court has ruled on two motions for partial summary judgment and a motion for summary judgment, and this matter is scheduled for a jury trial to begin on April 1, 2019. *See* Docket Entry (Dec. 13, 2018), ECF No. 210.

At the pretrial conference on March 5, 2019, Defendant asserted that any determination of civil penalties pursuant to 19 U.S.C. § 1592 would not be an issue

triable by jury. The Government disagreed. The court invited the parties to brief the issue, and the parties did so. *See* United States' Mem. Relating to the Jury's Consideration of Quantum ("Pl.'s Mem."), ECF No. 232; Univar's Mem. Demonstrating the Determination of any Discretionary Penalty is for the Judge, ECF No. 233. At issue before the court, therefore, is whether any determination of the amount of civil penalties pursuant to 19 U.S.C. § 1592 is an issue triable by the jury pursuant to federal statute or the Seventh Amendment to the U.S. Constitution. Having considered the parties' memoranda and arguments, and after due deliberation, the court finds that the determination of civil penalties pursuant to 19 U.S.C. § 1592 is not triable by jury.

## DISCUSSION

U.S. Court of International Trade ("USCIT") Rule 38(a) preserves a right to a jury trial provided by a federal statute or arising out of the Seventh Amendment to the U.S. Constitution.[1] The court first addresses whether section 1592 provides a right to have a jury determine any civil penalties and then turns to the Seventh Amendment analysis.

### A. Section 1592 Does Not Provide a Right to Have Civil Penalties Determined by a Jury

The statute provides that in an action seeking recovery of any monetary penalty pursuant to 19 U.S.C. § 1592, "all issues, including the amount of the penalty, shall be tried de novo." 19 U.S.C. § 1592(e)(1). Section 1592 provides the statutory framework for determining civil penalties depending on the degree of culpability of the violator.

---

[1] While USCIT Rule 38(d) permits a party to withdraw a demand for jury trial, such withdrawal must be with the consent of all parties. Univar does not suggest that it is partially withdrawing a jury demand on the civil penalty issue and, in any case, the Government has opposed Univar's assertion that any determination of civil penalties is for the court.

When a grossly negligent section 1592(a) violation[2] affects the assessment of duties, the statute provides for a civil penalty of no more than "the lesser of [ ] the domestic value of the merchandise, or [ ] four times the lawful duties, taxes, and fees of which the United States is or may be deprived." 19 U.S.C. § 1592(c)(2)(A). When a negligent section 1592(a) violation affects the assessment of duties, the civil penalty may not exceed "the lesser of [ ] the domestic value of the merchandise, or [ ] two times the lawful duties, taxes, and fees of which the United States is or may be deprived." *Id.* § 1592(c)(3)(A).[3] The statue is silent, however, as to whether the judge or jury must determine the amount of the penalty; in fact, it makes no mention of juries.

Congress adopted section 1592(c) in essentially its current form in 1978. The prior version of the law -- section 592 of the Tariff Act of 1930 -- required a fixed penalty regardless of the degree of culpability of the alleged violator and did not permit effective judicial review. S. Rep. No. 95-778, at 2, 17-18 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2211, 2213, 2228-29; *see also* Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, § 592, 92 Stat. 888, 895. The penalty imposed for a violation of section 592 was forfeiture of the merchandise or payment of a fine equal to its domestic value. S. Rep. 95-778, at 2, 17, *as reprinted in* 1978 U.S.C.C.A.N. at 2213, 2228-29. While Customs had authority to mitigate a penalty, upon judicial review, "the court [could] only decide whether or not a violation occurred.

---

[2] A violation of section 1592(a) occurs when a person—by fraud, gross negligence, or negligence—enters, introduces, or attempts to enter or introduce merchandise into the United States by means of a material and false act, statement, or omission. 19 U.S.C. § 1592(a)(1).

[3] Regardless of whether a monetary penalty is assessed, the United States shall require the payment of any "lawful duties, taxes, or fees" of which it has been deprived as a result of the violation of section 1592(a). 19 U.S.C. § 1592(d).

It [could not] change the amount of the statutory penalty, domestic value." S. Rep. No. 95-778 at 2, *as reprinted in* 1978 U.S.C.C.A.N. at 2213. The court had no ability to tailor the penalty to the degree of culpability.

With the passage of the Customs Procedural Reform and Simplification Act of 1978, Congress changed the civil penalty from a fixed amount "to an amount varying according to the culpability of the importer." S. Rep. No. 95-778, at 19, *as reprinted in* 1978 U.S.C.C.A.N. at 2230; H.R. Rep. No. 95-1517, at 10 (1978) (Conf. Rep.), *as reprinted in* 1978 U.S.C.A.N. 2249, 2252; 19 U.S.C. 1592(c). For the first time, "the appropriateness of the amount of the penalty" became "a proper subject for judicial review." S. Rep. No. 95-778, at 21, *as reprinted in* 1978 U.S.C.A.N. at 2232. While the legislative history is clear that the court is permitted "to make its own judgment about the appropriate remedy for a section [1]592 violation," H.R. Rep. No. 95-1517, at 10, *as reprinted in* 1978 U.S.C.C.A.N. at 2253; *see also* S. Rep. No. 95-778, at 20, *as reprinted in* 1978 U.S.C.C.A.N. 2231, that history, when read in isolation, does not shed light on whether "court" means judge or jury. *Cf. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998) (considering whether the word "court" in the context of the statutory damages provision of the Copyright Act of 1976 meant "judge, not jury").[4] Thus, the court is unable to discern any congressional intent to grant a

---

[4] A survey of section 1592 cases in the Court of International Trade does not aid in this respect. In several cases in which the court determined the civil penalty following a bench trial, the court has stated that it has the discretion to determine the penalty amount within the parameters set by the statute. *See United States v. Optrex Am., Inc.*, 32 CIT 620, 621, 639, 560 F. Supp. 2d 1326, 1328, 1342 (2008); *United States v. Inn Foods, Inc.*, 31 CIT 1474, 1475, 1488-90, 515 F. Supp. 2d 1347, 1350, 1361-62 (2007), *aff'd*, 560 F.3d 1338 (Fed. Cir. 2009); *United States v. Nat'l Semiconductor Corp.*, 30 CIT 769, 771-72, *modified on reconsideration*, 30 CIT 1428 (2006), *vacated and remanded*, 496 F.3d 1354 (Fed. Cir. 2007); *United States v. Complex Mach. Works*

statutory right to a jury trial on the determination of the amount of civil penalties pursuant to 19 U.S.C. § 1592(c).

### B. The Seventh Amendment Does Not Provide a Right to Have Civil Penalties Determined by a Jury

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const., amend. VII. The Seventh Amendment preserves the right to a jury trial that "existed under the English common law when the amendment was adopted." *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657 (1935). It also applies to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). A two-step inquiry determines whether a modern statutory cause of action is

---

*Co.*, 23 CIT 942, 942, 947, 83 F. Supp. 2d 1307, 1308, 1312 (1999); *United States v. Menard, Inc.*, 17 CIT 1229, 1229, 838 F. Supp. 615, 616 (1993), *aff'd in part, vacated in part*, 64 F.3d 678 (table) (Fed. Cir. 1995); *United States v. Modes, Inc.*, 17 CIT 627, 628, 635-36, 826 F. Supp. 504, 506, 512 (1993). In the absence of a jury demand, the court was not required to determine whether the penalty amount was to be determined by the jury in these cases. There is one case in which the jury determined the amount of civil penalty. *See United States v. Priority Prods., Inc.*, 793 F.2d 296, 298 (Fed. Cir. 1986) ("The case proceeded to a trial before a jury[;] . . . The jury found all three defendants . . . jointly and severally liable for a penalty of $30,000."). However, there is no indication that *Priority Products* addressed whether the defendant had a right to a jury's determination of the quantum of the civil penalty and the case predates *Tull v. United States*, 481 U.S. 412 (1987) by two years. *See id.*; *United States v. Priority Products, Inc.*, 9 CIT 383, 615 F. Supp. 591 (1985); *infra* pp. 5-7 (discussing *Tull*). The court has located only one case in which the court was confronted with the same issue and decided, without explanation, that the defendant had a right to a jury trial to determine liability, but not to any other aspect of the case. *See* Order, *United States v. Tri-State Hosp. Supply Corp.*, Court No. 97-04-00678 (CIT May 10, 1999), Docket Entry 55.

analogous to a common-law action that was tried in a court of law. *Tull*, 481 U.S. at 417-18. First, the court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* at 417. "Second, [the court must] examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18.

The parties do not dispute that Defendant has a right to have a jury determine liability pursuant to 19 U.S.C. § 1592(a)(1) and the court agrees. In *Tull*, the U.S. Supreme Court analogized actions by the Government seeking civil penalties under statutory provisions to a common law "action in debt," for which the Seventh Amendment guarantees a defendant's right to a jury trial on liability. *Id.* at 420, 424. Thus, Univar has a right to have a jury determine its liability for civil penalties pursuant to 19 U.S.C. § 1592(a)(1) and, by timely demanding a jury in its answer, has properly invoked that right.

Nevertheless, "[t]he Seventh Amendment is silent on the question of whether a jury must determine the remedy in a trial in which it must determine liability." *Id.* at 425-26. Although a defendant may have a right to a jury trial to determine liability pursuant to section 1592(a), whether a defendant has a right to have a jury determine the civil penalty quantum is a separate inquiry. *Id.* The answer to that inquiry "depend[s] on whether the jury must shoulder this responsibility as necessary to preserve the 'substance of the common-law right of trial by jury.'" *Id.* at 426 (quoting *Colgrove v. Battin*, 413 U.S. 149, 157 (1973)).

In *Tull*, the U.S. Supreme Court held that, although the Seventh Amendment guarantees a defendant a right to a jury trial to determine liability in a civil penalty action

brought by the United States under the Clean Water Act, the defendant had no such right with respect to the determination of civil penalties. *Id.* at 427. The Court reasoned that, in an action to recover civil penalties, the United States usually seeks the penalty amount fixed by Congress. *See id.* at 426 (citing *United States v. Regan*, 232 U.S. 37, 40 (1914); *Hepner v. United States*, 213 U.S. 103, 109 (1909)). Accordingly, the Court concluded that the determination of civil penalties does not involve the "substance of a common-law right to a trial by jury." *Id.* The Court also reasoned that, since Congress had the authority to determine the statutory penalty, Congress could delegate that function to trial judges. *Id.* at 427. The Court noted that the determination of penalties under the Clean Water Act involved "highly discretionary calculations that take into account multiple factors," and that such calculations were "traditionally performed by judges." *Id.* (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 442-43 (1975) (Rehnquist, J., concurring)).

Applying the Court's decision and reasoning in *Tull* to the instant action, the court concludes that the Seventh Amendment does not guarantee a right to a trial by jury to determine civil penalties pursuant to section 1592(c). As in *Tull*, "Congress' authority to fix the penalty by statute has not been questioned." *Tull*, 481 U.S. at 426. Similar to the Clean Water Act, which provides for a maximum civil penalty of "'$10,000 per day' during the period of the violation," *id*. at 414, section 1592(c) now sets varying maximum penalties depending on the degree of culpability, *see* 19 U.S.C. § 1592(c). Congress's ability to delegate the civil penalty determination to trial judges at the Court of International Trade is not in question. Congress has done so here because, while it chose to set statutory maximums, it clearly intended for the court "to make its own

judgment about the appropriate remedy for a section [1]592 violation." H.R. Rep. No. 95-1517, at 10, *as reprinted in* 1978 U.S.C.C.A.N. at 2253.  In contrast, the court retains no discretion as to whether or not to award duties, taxes, or fees, of which the United States has been deprived as a result of a section 1592(a) violation.  19 U.S.C. § 1592(d) (separate and regardless of any civil penalty determination, payment of any lost duties, taxes, or fees, "shall be required"; such determination lies with the jury and Univar has not suggested otherwise).  Correspondingly, similar to the Clean Water Act, which required "highly discretionary calculations . . . traditionally performed by judges," *Tull*, 481 U.S. at 427, section 1592(c) requires a similar discretionary determination.[5]

---

[5] In *Tull,* the Court noted that the Clean Water Act required consideration of "multiple factors" in calculating the amount of civil penalties.  481 U.S. at 427.  Although section 1592(c) does not specify the factors the court must consider when determining civil penalties, the absence of articulated factors does not detract from Congress' commitment of the penalty determination to the court's discretion. While not binding here, the court has identified and considered up to 14 factors when determining the appropriate penalty.  *See Complex Mach. Works Co.*, 23 CIT at 949–50, 83 F. Supp. 2d at 1315 (outlining 14 factors); *United States v. Nat'l Semiconductor Corp.*, 496 F.3d 1354, 1356 (Fed. Cir. 2007) (stating that the 14 factors identified in *Complex Machine Works* "are factors the Court of International Trade may consider when determining the appropriateness of a civil penalty for a violation of customs laws").  In *Complex Machine Works Co.*, the court looked to numerous Acts imposing civil penalties, including the Clean Water Act, that articulated factors to guide the determination of the proper penalty amount.  *See Complex Mach. Works Co.*, 23 CIT at 947-49 & n.10, 83 F. Supp. 2d at 1313-14.  The factors are:

> (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business; (9) that the penalty not otherwise be shocking to the conscience of the [c]ourt; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency authority; (13) whether the party

Therefore, a determination of a civil penalty pursuant to section 1592(c) is not "an essential function of a jury trial," and the Seventh Amendment does not provide a right to have a jury determine civil penalties pursuant to section 1592(c). See id.; cf. Albemarle, 422 U.S. at 443 (Rehnquist, J., concurring) (rejecting the notion that a party may demand a jury in a Title VII case as to the award of backpay "notwithstanding a finding of unlawful discrimination" because discretionary determinations implicating a court's jurisdiction over equitable matters are not susceptible to jury demands).

The Government's arguments to the contrary are not persuasive.[6] The Government correctly asserts that the Seventh Amendment guarantees a right to a jury trial on the assessment of damages if such a right existed in a comparable action that pre-dated the Amendment. See Pl.'s Mem. at 3-4 (citations omitted). The U.S. Supreme Court has recognized that the assessment of damages in certain civil suits is a matter within the province of the jury. See, e.g., Day v. Woodworth, 54 U.S. 363, 371 (1851) ("It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary,

---

sought to be protected by the statute had been adequately compensated
for the harm; and (14) such other matters as justice may require.
Id. at 949–50, 83 F. Supp. 2d at 1315. The Government has not suggested departure from those 14 factors.

[6] The court takes note that the Government's position here is at odds with its position in Tri-State. In Tri-State, the defendant sought a jury trial on all issues. The Government agreed that defendant had a right to a jury trial on liability but, citing Tull, argued that the defendant was not entitled to demand that a jury determine the civil penalty to be imposed. Pl.'s Resp. to Def.'s Demand for Jury Trial, United States v. Tri-State Hosp. Supply Corp., Court No. 97-04-00678 (CIT May 10, 1999), Docket Entry No. 13. The Tri-State court agreed with the Government but did not explain its reasoning. See supra note 4. In arguing for a jury to determine the civil penalty here, the Government does not point to any intervening case law or statutory changes that might explain its change in position.

punitive, or vindictive damages upon a defendant . . . ."); *Dimick v. Schiedt*, 293 U.S. 474, 480 (1935) (stating that "the common-law rule as it existed at the time of the adoption of the Constitution" was that "in cases where the amount of damages was uncertain[,] their assessment was a matter so peculiarly within the province of the jury that the Court should not alter it."); *Pernell v. Southall Realty*, 416 U.S. 363, 370 (1974) ("Th[e] Court has long assumed that actions to recover land, like actions for damages to a person or property, are actions at law triable to a jury."); *Feltner*, 523 U.S. at 353 ("[T]here is overwhelming evidence that the consistent practice at common law was for juries to award damages.") (citations omitted).  In none of the cases on which the Government relies, however, was the Government the plaintiff seeking a civil penalty. In contrast to civil suits between private litigants, the U.S. Supreme Court has analogized "the awarding of civil penalties to the Government . . . to sentencing in a criminal proceeding." *Feltner*, 523 U.S. at 355 (citing *Tull*, 481 U.S. at 428 (Scalia, J., concurring in part and dissenting in part)).[7]

There is also no historical evidence that juries determined discretionary civil penalties to be paid to the Government in customs cases at the time the Seventh Amendment was adopted.  The Government cites five cases, each of which is inapposite.  Pl.'s Mem. at 6-7 (citing *Wight v. Curtis*, 29 F. Cas. 1170, 1171 (C.C.S.D.N.Y. 1845); *Lawrence v. Caswell*, 54 U.S. 488, 490 (1851); *Maxwell v.*

---

[7] The Government further avers that this court "has long recognized that in a section 1592 action such as this one, it 'may order a trial by a jury of any or all issues.'"  Pl.'s Mem. at 5 (quoting *Priority Prods.* 615 F. Supp. at 597).  As noted earlier, *Priority Products* predates *Tull* and there is no indication that the court considered whether the Seventh Amendment gave the Defendant a right to have the civil penalty determined by the jury.

*Griswold*, 51 U.S. 242, 247 (1850); *Greely v. Thompson*, 51 U.S. 225, 230 (1850); *In re One Hundred & Twenty-Three Packages of Glass*, 18 F. Cas. 709, 711 (C.C.S.D.N.Y. 1841)).  Four of the five cases involved suits by private parties against the Collector of Customs[8] to recover allegedly overpaid duties, rather than suits brought by the Government.  *See Wright*, 29 F. Cas. at 1170; *Lawrence*, 54 U.S. at 488; *Maxwell*, 51 U.S. at 242; *Greely,* 51 U.S. at 226.  The remaining case involved an information filed to seek forfeiture of goods allegedly undervalued with the "intent, by a false valuation, to defraud the revenue of the United States."  *In re One Hundred & Twenty-Three Packages of Glass*, 18 F. Cas. at 710.  There, the issues concerned the real or market value of the goods on the date of the invoice and whether the invoice value was made up to defraud the revenue, questions presented to the jury.  *Id.* at 710-11.  Those are the type of factual determinations that are traditionally within the province of the jury. Once that liability was determined, the penalty provided by statute was forfeiture of the goods.  *See id. (citing* An Act for the More Effectual Collection of the Impost Duties, ch. 147, § 4, 4 Stat. 409, 410 (1830)).  There were no factors to weigh and no discretionary civil penalty amount to be determined. Thus, the *in rem* remedy sought in that case is not analogous to the discretionary civil penalty that the Government now seeks pursuant to section 1592(c).

### Conclusion

Univar filed a demand for a "jury trial on all issues so triable."  Neither section 1592 nor the Seventh Amendment to the U.S. Constitution guarantees a right to have the jury determine civil penalties to be paid to the Government.  The court finds that the

---

[8] In early customs cases, the named defendant was usually the Collector of Customs.

determination of the quantum of civil penalties pursuant to section 1592(c) is not an issue triable to the jury.

    SO ORDERED.

                                                  /s/     Mark A. Barnett
                                                                  Judge

Dated: March 26, 2019
       New York, New York